IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

RHONDA HENDRIX, parent and guardian of
GATLIN PERRYMAN, a minor child,
    Plaintiffs,

v.                                                  Case No. 3:07cv133/MCR/EMT

EVENFLO COMPANY, INC.,
    Defendant.
_____/

## ORDER

        This cause is before the court upon the District Judge's order (Doc. 218) referring this case back to the undersigned to consider the testimony of Defendant's expert and determine whether the expert's testimony has any effect on the undersigned's earlier order (Doc. 193) denying Plaintiffs' second motion to compel (Doc. 161).

        Plaintiffs, in their second motion to compel (hereafter "motion to compel"), sought an order compelling Defendant to produce documents related to a safety recall campaign ("recall") launched by Defendant on February 1, 2008 (Doc. 161 at 1).  The recall is based on testing which showed that Defendant's Discovery Car Seat Models 390 and 391 "could potentially become separated from [their] base[s] in high impact side collisions similar to those in the tests" (*id.*, Ex. 4 (Press Release)). The car seat models subject to the recall were produced between April 2005 and January 2008 (*id.*, Ex. 7).  The car seat involved in the instant litigation was a Discovery Model 212, and it was manufactured in December 2000; therefore, it is not subject to the recall (*see, e.g.*, Doc. 171 at 3).

        On March 20, 2008, this court issued an order denying Plaintiffs' motion to compel (Doc. 193).  The motion was denied based upon a combination of factors, including the following:  1) the circumstances that led to the recall are not substantially similar to those surrounding Plaintiffs' accident because the car seat models are different, the model involved in Plaintiffs' accident is not

subject to the recall, the accident at issue in the instant case (a low speed rear-end collision) is not similar to the accidents simulated in Defendant's testing (high-speed side impact collisions) which led to the recall, and the instant "case now <u>appears to concern</u> a "false latch" situation (that is, [Plaintiffs'] car seat carrier was not properly attached to its base), instead of a seat/base separation of a properly attached car seat" (like the car seats in the testing that led to the recall) (*see* Doc. 193 at 7) (emphasis added); 2) the car seat models subject to the recall were manufactured more than four years after the model involved in the instant case, and testing that led to the recall occurred approximately seven (7) years after Plaintiffs' car seat was manufactured (remoteness is a proper factor to consider (*see id.* at 6)); and 3) the production of recall-related discovery would impose an undue burden or expense on Defendant, especially considering that Defendant has already provided over 14,000 pages of documents consisting of all consumer contact files of Discovery seat/base separations and hundreds of testing videos (*see* Doc. 193).[1]

On April 4, 2008, Plaintiffs filed "Objections to Magistrate Judge's March 20, 2008 Order Denying Plaintiffs' [] Motion to Compel or in the Alternative, Motion for Reconsideration on the Basis of New Information" (Doc. 202). Although Plaintiffs raised numerous objections to the undersigned's order denying the motion to compel (*see, e.g.*, Doc. 202 at 2), the District Court's order referring this matter back to the undersigned specifically states as follows: "This matter is referred back to the magistrate judge to consider the testimony of defendant's expert in deciding whether the circumstances surrounding the safety campaign are reasonably calculated to lead to the discovery of admissible evidence on plaintiff's claim of defect in this case."[2] (Doc. 218). Thus, the undersigned's reconsideration of the matter is limited to a consideration of the expert report provided by William Van Arsdell, Ph.D., P.E. ("Van Arsdell"), Defendant's expert witness, and a determination of whether it provides a basis for permitting discovery of recall-related information.

A review of Van Arsdell's report reveals that Defendant consulted Van Arsdell to investigate

---

[1] The law, as it relates to this dispute, is fully set out in this court's earlier order (Doc. 193) and need not be repeated here.

[2] Although the District Court's order refers to the "testimony" of Defendant's expert, the information provided by Plaintiffs with their objections is actually a report authored by Defendant's expert (*see* Doc. 202, Ex. A).

Case No.: 3:07cv133/MCR/EMT

the following: (1) how and if Gatlin Perryman ("Gatlin") was restrained during the accident; (2) the cause of the damage to the Discovery Evenflo Child Restraint System ("CRS") involved in the accident; (3) the design of the CRS; (4) the opinions of other experts; and to (5) design and administer Van Ardell's own tests to evaluate the performance of the CRS (Doc. 202, Ex. A at 6). Van Arsdell reviewed police reports, court documents, exhibits, photographs, expert reports and depositions, witness depositions, Gatlin's medical and school records, Plaintiffs' testing videos, Defendant's testing videos, instruction manuals for an exemplar CRS, the owner's manual for Plaintiffs' vehicle, National Highway Traffic Safety Administration ("NHTSA") files, Federal Motor Vehicle Safety Standards ("FMVSS") reports, Defendant's engineering drawings, and other miscellaneous items in order to assist him in reaching his conclusions (*id*. at 1–6).

Initially, Van Arsdell inspected Gatlin's CRS (*id*. at 7). From the inspection, Van Arsdell concluded that the CRS was fractured extensively on the upper rear portion of the shell (*id*. at 8). Van Arsdell inspected five (5) white components that appeared to be broken pieces of the upper rear shell (*id*.). Van Arsdell also inspected the seat belt locking clip and determined that it was bent (*id*. at 9). Van Arsdell concluded that the CRS had numerous "saw-tooth" or "weave-type" patterned abrasions on the back of the shell and on the carrier handle (*id*.). Van Arsdell additionally inspected the carrier handle latch mechanism and determined that there were clear indications of "rearward loading" on the handle while the handle was in the upright position (*id*. at 11). Van Arsdell did not examine the right fetter pin from the CRS or the right passenger air bag on Plaintiffs' vehicle because those items were not available (*id*. at 9, 11).

Next, Van Arsdell designed a series of "sled" and "drop" tests to investigate Plaintiffs' theory that the damage to the CRS was caused because the CRS, allegedly installed in the <u>back seat</u> of Plaintiffs' vehicle, detached from its base and struck the center console during the accident because it was either unlatched, partially latched, or produced with a defective latch (*id*. at 12). Van Arsdell also utilized his tests to investigate Defendant's theory that Gatlin's CRS was damaged because it was allegedly in the right <u>front passenger seat</u>, either belted or unbelted, when the passenger air bag deployed and struck the CRS (*id*.).

Van Arsdell made conclusions, including the following, based upon the materials he reviewed and tests he conducted: (1) the physical evidence on Gatlin's CRS is consistent with

the seat being improperly installed in the right front passenger seat and being struck by the passenger air bag; (2) Defendant employs reasonable and appropriate development, design, and testing procedures; (3) the fetter pins were properly installed, and fetter pins are an acceptable means of attachment for the red release handle of the CRS; (4) the fetter pin can be dislodged as a result of an air bag striking the CRS and deforming the shell; (5) at the time of the collision, the CRS was misused by Plaintiff because it was improperly installed in the right front seat; (6) if Plaintiff had used the CRS in accordance with the instructions, the seat would have performed well, would not have detached, and would have provided a reasonable level of protection; (7) the CRS was not partially latched or false-latched, nor did it separate from its base; (8) CRSs tested and designed in accordance with FMVSS 213 do an excellent job of protecting children and provide a reasonable level of protection in a wide range of reasonably foreseeable crash events, not just frontal collisions; (9) the CRS would not have fractured as it did if it had not been hit by the air bag; (10) the Evenflo Discovery CRS is affordable and easy to use; (11) it was appropriate and reasonable to design and sell the CRS without a tether; (12) padding would not have provided a significant benefit in Plaintiffs' collision; (13) a 5-point harness would not have performed materially different than the 3-point harness; (14) Gatlin's CRS complies with all applicable FMVSSs, is not defective, and is reasonably safe for its intended purpose; (15) the Exponent (that is, Van Arsdell's) sled and drop tests, Dr. Scott's drop tests, and Mr. Whitman's air bag tests all provide relevant engineering information pertinent to this case, either for reconstruction or demonstration purposes (*id.*, at 30–31).

The thrust of Plaintiffs' objection, as it relates to Van Arsdell's report, appears to be that the order denying Plaintiffs' motion to compel was based upon an erroneous belief that the CRS in the instant case was in a "false latch" position at the time of the accident, but Van Arsdell has now stated that Gatlin's CRS was properly secured, just like the seats in the testing that led to Defendant's recall; therefore, the recall-related discovery should be permitted.[3]

---

[3]Plaintiffs' assertion that Van Arsdell's "new" false latch opinion could not have been brought to the court's attention any earlier is disingenuous (*see* Doc. 202 at 3). In pertinent part, in their objections filed with the District Court, Plaintiffs state "Obviously, since Plaintiffs had not seen [Van Arsdell's] report[] when they filed their Motion [to Compel], they were not able to argue how these opinions further support their right to conduct the discovery sought. <u>Since no reply brief is permitted under the rules</u>, Plaintiffs were not able to bring the additional arguments justifying the

Indeed, in its earlier order, this court stated it "appears" that Gatlin's car seat was in a false latch condition (*see* Doc. 193 at 7), but the court's observation was based upon the testimony of <u>Plaintiffs' own expert</u>, Dr. Charles Benedict ("Benedict") (*id.* at 7–8). Plaintiffs now rely on information provided by Defendant's expert, which contradicts their own expert's testimony, to apparently advance an argument that Gatlin's car seat was <u>not</u> falsely latched at the time of the accident and to argue that the order denying their motion to compel was erroneous. It is unclear what position Plaintiffs will ultimately take, but either way the new information provided by Van Arsdell establishes only that a factual dispute may now exist regarding whether the seat was properly secured at the time of the accident. However, the "false latch" situation was <u>but one factor</u> considered by the undersigned in determining that the accident at issue in the instant case and the accidents leading to the recall were not substantially similar to justify recall-related discovery.[4]  The other distinguishing factors between the accidents, <u>which are not in dispute</u>, have not changed in light of Van Arsdell's report. These factors include the following: 1) the car seat models are different, 2) the model involved in Plaintiffs' accident is not subject to the recall, and 3) the accident at issue in the instant case is not similar to the accidents simulated in Defendant's testing.   The point is that only certain CRSs were subject to the recall, not

---

Motion to the Court's attention." (*id.*) (emphasis added).  Initially, Plaintiffs filed their motion to compel on February 14, 2008, Defendant provided Van Arsdell's report to Plaintiffs on March 3, 2008 (Doc. 217 at 6), and the order denying Plaintiffs' motion to compel was not issued until March 20, 2008; therefore, although Plaintiffs did not have the report at the time the motion to compel was filed, Plaintiffs had ample time to seek leave from the undersigned to file a reply brief based on Van Arsdell's report.  Additionally, Plaintiffs' assertion regarding a prohibition against reply briefs is clearly erroneous, and the court is troubled that Plaintiffs' counsel would make this assertion.  First, attorneys admitted to practice in the Northern District of Florida are expected to know the local rules (*see* N.D. Fla. Loc. R. 11.1(B)), including Rule 7.1(C)(2), which states that no "reply memoranda shall be filed <u>absent a showing of good cause and upon leave of the court</u>" (emphasis added).  The Rule clearly does not state that "no reply brief is permitted."  Second, and more important, Plaintiffs have availed themselves of Rule 7.1's provision before when they sought leave to file a reply brief in support of their motion for sanctions, <u>specifically pursuant to Rule 7.1(C)(2)</u> (*see* Doc. 131).  Thus, Plaintiffs were well aware that a potential opportunity existed to supplement their motion to compel with Van Arsdell's report prior to the undersigned's ruling on their motion to compel.

[4]Again, Plaintiffs have made assertions in their objections filed with the District Court that are troubling to the undersigned.  Specifically, Plaintiffs assert that "it is improper for the Magistrate to prohibit all the sought after recall related discovery based on a 'false latch' opinion which is disputed by [Defendant's] expert," and similarly, that "it is improper to limit the discovery in this case to situations in which the safety seat was "false latched" as the Magistrate did in the March 20, 2008 Order" (*see* Doc. 202 at 6–7).  These assertions are misleading.  The undersigned's earlier order was clearly based on factors other than the apparent "false latch" condition of Gatlin's CRS, and the court has not limited discovery in this case only to situations involving "false latch" (*see, e.g.,* Doc. 193).

Case No.: 3:07cv133/MCR/EMT

Gatlin's, because Defendant's testing revealed that those certain CRS's could become detached from their bases in high-impact side collisions. Plaintiffs simply cannot establish that the circumstances of their accident are similar to those involved in Defendant's testing, as Plaintiffs' accident was a slow speed rear-end/frontal collision. Defendant's testing did not establish or suggest that <u>any</u> CRS, including Gatlin's <u>or</u> those subject to the recall, could detach in slow speed rear-end collisions. Thus, the "false latch" factor, now apparently in dispute, does not change the court's earlier conclusion regarding the dissimilarity of the accidents.

Additionally, the court finds that Van Arsdell's report actually <u>supports</u> this court's earlier order denying Plaintiffs' motion to compel. First, Van Arsdell specifically opines that, "In my opinion, the recall is irrelevant because it involves a different CRS design and relates to high speed side impact collisions." (Doc. 202, Ex. A at 25). Second, and more important, the <u>primary</u> conclusion contained in Van Arsdell's report is that Gatlin's CRS was improperly installed in the <u>front passenger seat</u>, and Gatlin was injured and his CRS damaged as a result of the deployed passenger air bag, not because of a defectively designed CRS (*id*. at 6). Thus, recall-related information is clearly not relevant on the basis of Van Arsdell's report because even if Gatlin's CRS had been subject to the recall, if his CRS had been improperly placed in the front seat as Van Arsdell opines, a "supplemental fastener" provided as part of the recall would not have prevented injury (*id*. at 28). Moreover, Defendant's recall-related testing obviously did not concern circumstances where CRSs are misused, as Van Arsdell opines.

Although the thrust of Plaintiffs' objections concern the "false latch" dispute, Plaintiffs additionally advance arguments based on "broad assertions" contained in Van Arsdell's report, including those regarding Defendant's "reasonable and appropriate development, design and testing procedures" and his opinion that the latch design of the CRS is not defective and performs reasonably in a wide range of foreseeable accidents, not just frontal collisions (*see* Doc. 202 at 5; Doc. 217 at 10). Plaintiffs contend that these assertions should permit recall-related discovery "for, at a minimum, purposes of cross-examination and impeachment" (Doc. 202 at 5). Defendant has countered this contention by noting that an expert runs the risk of having excluded any opinion not included in his report, and these opinions were included with Van Arsdell's report in the event this "litigation takes an unforeseen turn" (Doc. 217 at 10).

In objecting to this court's earlier order on the basis of Van Arsdell's " broad assertions," Plaintiffs chose to focus on six of the twenty-two (22) conclusions in Van Arsdell's report to demonstrate how his report "opens the door" to evidence relating to the recall (Doc. 202 at 5). It is important to note, however, that Van Arsdell's report is thirty-two (32) pages in length, and the conclusions identified by Plaintiffs are found on the last two pages of his report (*see id.*, Ex. A). The body the report, however, describes in detail the testing and investigation that ultimately led Van Arsdell to opine that Gatlin's CRS was misused, and most of the conclusions relate to this ultimate opinion (*id.*). Moreover, the court notes that Van Arsdell's opinions regarding "false latch" theories of detachment and his general conclusions regarding the safety and reliability of Gatlin's CRS in various types of accidents are in direct response to Plaintiffs' various allegations as to how the CRS malfunctioned. For example, Plaintiffs' expert, Dr. Benedict, concluded that Gatlin's CRS detached from its base on the basis of a false latch theory (Doc. 171, Ex. B at 4, 6). In response to Dr. Benedict's opinion and the allegations in Plaintiffs' second amended complaint (Doc. 150 at 8–9), Van Arsdell opined that Gatlin's CRS was not partially latched or false latched, noting that "The false latch condition that has been demonstrated by plaintiff is contrived and involves standing over the base, carefully setting the carrier on top of the base without properly placing the foot end of the carrier under the J-hook and then using two hands to apply a force in a way that is not representative of actual use." (Doc. 202, Ex. A at 22, 30). Additionally, Plaintiffs have claimed that Defendant was negligent for failing to test accidents other than frontal collisions (*id*. at 24; *see also* Doc. 150 at 4–5). Although Van Arsdell opines that this claim appears to be irrelevant since Plaintiffs' accident was a frontal collision, he responds to Plaintiffs' allegation by stating that "there is a large body of evidence showing that CRSs tested and designed in accordance with FMVSS 213 do an excellent job of protecting children and protecting children in a wide range of reasonably foreseeable crash events, not just frontal collisions" (Doc. 202, Ex. A at 24). Further, in response to Plaintiffs' criticism of Defendant's design, testing methodologies, and investigation of real world accidents, Van Arsdell opines that Defendant "employs reasonable and appropriate engineering practices in the design and development of CRSs" (*id*. at 24). Although Van Arsdell's report contains general opinions regarding the safety of the CRS in any type of accident, the crux of his opinion is that the CRS

in the instant case was in the front passenger seat when the accident occurred. Moreover, this court finds that Van Arsdell's general opinions about the reasonably safe nature of Evenflo's products do not open the door to details of a recall involving different products tested under different accident conditions.

Thus, after fully considering the new evidence provided by Defendant's expert, the undersigned's original opinion has not changed. In sum, the court concludes that: 1) the circumstances that led to the recall are not substantially similar to those surrounding Plaintiffs' accident because the car seat models are different, the model involved in Plaintiffs' accident is not subject to the recall, and the accident at issue in the instant case is not similar to the accidents simulated in Defendant's testing; 2) the models subject to the recall were manufactured more than four years after the model involved in the instant case, and testing that led to the recall occurred approximately seven (7) years after Plaintiffs' car seat was manufactured; 3) the production of recall-related discovery would impose an undue burden or expense on Defendant;[5] and 4) <u>on the basis of Van Arsdell's report, information surrounding the safety campaign is not reasonably calculated to lead to the discovery of admissible evidence</u>.

**FILED** this 9th day of May 2008.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

---

[5] It is worth noting that Plaintiffs have not disputed the "undue burden or expense" finding in their objections filed with the District Court (*see* Docs. 193 at 8, 202).

Case No.: 3:07cv133/MCR/EMT