UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

RHONDA HENDRIX, parent and guardian of
GATLIN PERRYMAN, a minor child,

    Plaintiffs,                                              Case No. 3:07-CV-133-MCR-EMT

vs.

EVENFLO COMPANY, INC.,

    Defendant.
_____/

### MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO STRIKE THE SUPPLEMENTAL REPORTS OF WILLIAM VAN ARSDELL, Ph.D., MAUREEN REITMAN, Sc.D., AND WILLIAM R. SCOTT, Ph.D., AND TO PRECLUDE THE USE OF ADDITIONAL NEW EXPERT TESTING

Pursuant to Fed.R.Civ.P. 16(f), 26, 37, Local Rule 7.1(B), this Court's Final Scheduling and Trial Order (Doc. #30) and this Court's July 17th, 2008 Order (Doc. #269), plaintiffs have moved this Court for an Order striking Evenflo's so-called "supplemental" expert reports of William Van Arsdell, Ph.D. ("Van Arsdell"), Maureen Reitman, Sc.D. ("Reitman"), and William R. "Mike" Scott, Ph.D. ("Scott") (collectively "Evenflo's experts") on the grounds that these reports are not Rule 26(e) "supplemental reports" as claimed by defendant but are in fact pure **rebuttal** reports, served without leave of Court in violation of its Final Scheduling and Trial Order, and are based on extensive new testing and other work done by defendant's experts more than a month **after** the close of discovery. Since this testing was untimely and the "supplemental" reports were filed without leave of Court, plaintiffs also move for an Order precluding any use of this new testing and other work by these or any other witnesses.

### I.    BACKGROUND

On April 25, 2008, this Court ordered that discovery would close on **June 20, 2008**. (Doc. #223). As the Court is aware, on June 19, 2008, June 20, 2008, and June 26, 2008,

1

Plaintiffs served Rule 26(e) supplemental expert reports of Edward Hoffman, M.D. ("Dr. Hoffman"), Charles Benedict, Ph.D. ("Dr. Benedict"), Dennis Shanahan, M.D. ("Dr. Shanahan"), and Gary Whitman ("Mr. Whitman"). The supplemental reports addressed the extensive discovery that had come to light since the experts' initial disclosures had been filed and their depositions had been taken.

Immediately thereafter, on July 2, 2008, Evenflo filed its "Motion to Strike Plaintiffs' Supplemental Expert Reports and Request for Expedited Briefing and Disposition" (Doc. #245) along with its "Memorandum in Support." (Doc. #246). In these pleadings, **Evenflo acknowledged the June 20, 2008 discovery deadline**[1] and argued that this Court should strike the supplemental expert reports of Mr. Whitman, Dr. Hoffman, Dr. Benedict and Dr. Shanahan because these experts' supplemental reports allegedly contained "new opinions and/or new bases for opinions, and/or new or expanded descriptions of claimed competency and experience of the expert, changed opinions, and 'rebuttal' opinions, not contained in their original expert reports or in their prior depositions." *See* Evenflo's Motion to Strike (Doc. #245) at pg. 10.

As justification for its proposed Order striking plaintiffs' experts' supplemental Rule 26(e) reports, Evenflo argued that the timing of the filing of these supplemental reports close to the close of discovery subjected it to "prejudice." *See* Evenflo's Memo. in Support (Doc. #246) at pg. 3. In particular, Evenflo argued that the filing of these supplemental reports "**adversely affected Evenflo's preparation of its *Daubert* and dispositive motions.**" *Id*. (emphasis added) Evenflo argued that "[b]ecause discovery is now over, **Evenflo cannot depose Plaintiffs' experts regarding the new opinions and bases in their 'supplemental report**.'" *Id*. (emphasis added) Therefore, Evenflo affirmatively represented to this Court that further depositions of plaintiffs' experts directed at their supplemental reports and the basis thereof would be required in order to cure the alleged prejudice to Evenflo. *Id.* Nowhere in Evenflo's Motion to Strike or

---

[1] *See* Evenflo's Motion to Strike. (Doc. #245) at pg. 9.

2

Memorandum of Law did Evenflo represent that it would be prejudiced if it was not permitted to conduct extensive new testing and work, nor did it ask for leave to do so after the close of discovery.  *See* Doc. #245 and 246.

After reviewing Plaintiffs' response to Evenflo's motion to strike (see Doc. #259), this Court issued its Order on July 17, 2008.  *See* Doc. #269.  This Court rejected Evenflo's claim that plaintiffs' expert reports were "solely" rebuttal in nature thereby necessitating prior leave of Court before filing and noted that "while the supplemental reports of Plaintiff's experts do contain additional information based upon matters raised by Defendant's experts and other witnesses, their initial opinions are not substantially altered."  The Court denied Evenflo's motion to strike. *Id*. at pg.1.

In an effort to alleviate Evenflo's shrill claims of prejudice for not having the ability to redepose plaintiffs' experts regarding their supplemental reports, the Court agreed to reopen **expert** discovery for an additional thirty days.  *Id*. (emphasis added)  The Court did **not** reopen all discovery nor did it give the parties the right to run out and perform new testing and generate new work to bolster their cases after the close of discovery.  To the contrary, the Court's Order was clearly intended to alleviate Evenflo's claim of prejudice for not being able to redepose plaintiffs' experts for purposes of preparing *Daubert* and dispositive motions, and it required that "[t]he parties shall complete **all expert discovery** and disclosures, including Rule 26(e) disclosures, on or by August 18, 2008."  *Id*. (emphasis added).

The Court's July 17 Order did not expressly or implicitly supersede all the provisions of its other Orders, but merely stated that the new August 18, 2008 **expert discovery deadline** "supersedes all prior **expert disclosure deadlines** imposed by this Court and additionally supersedes all provisions for such **disclosure deadlines** as provided in the Federal Rules of Civil Procedure and Local Rules of this Court."  *Id*. at 1-2 (emphasis added).  This Court did not

3

reference or include the provision in the Court's "Final Scheduling and Trial Order" imposing a mandatory requirement – **not a deadline** – that rebuttal disclosures pursuant to Fed.R.Civ.P. 26(a)(2) required "leave of court" and "good cause." *See* Doc. #30 at ¶ 6.  As is explained in more detail below, defendant's experts' reports are not "supplemental" in nature but are in fact "solely" rebuttal reports designed to contradict the opinions of plaintiffs' experts and as such, required leave of Court before service.

Recognizing that Evenflo might attempt to misuse the Court's Order to attempt to reopen all discovery and conduct new testing, Plaintiffs' counsel attempted to proactively resolve any dispute on this issue.  *See* Exhibit A (July 21, 2008, 3:05 PM email from Evan Douthit to Timothy McDermott).  As is evident from this email correspondence sent just four days after this Court's July 17 order and almost two weeks before Evenflo's "supplemental" expert reports were served, Plaintiffs' counsel reminded Evenflo that this Court did not reopen all discovery.  *Id*.  Furthermore, Plaintiffs' counsel warned Evenflo that, "[i]f you are contemplating having your experts do any additional work or come up with any new opinions now that we **just** completed their depositions, rest assured that we will move to strike any such opinions and preclude any additional work."  *Id*. (emphasis in original).  In response, Evenflo's counsel stated that "Evenflo intends to fully comply with all aspects and provisions of this Court's [Order] of July 17th, as its provisions are clear."**2**  Exhibit B (July 21, 2008 email, 10:27 PM email from Timothy McDermott to Evan Douthit).

Thereafter, and despite the fact that **Evenflo claimed it needed further depositions of plaintiffs' experts** in order to cure the alleged prejudice to its ability to prepare its *Daubert* and dispositive motions, **Evenflo only conducted one expert deposition** during this 30 day period

---

[2] This response precludes Evenflo from defending its conduct on any claimed ambiguity in this Court's Orders.

of expert discovery allowed by the Court.³  Instead, and just as Plaintiffs' counsel had anticipated, Evenflo served "supplemental" reports of its experts that referenced two different types of new testing done by two different experts, along with a DVD containing hundreds of pages of reports, charts, graphs and other materials from this new testing.  *See* Exhibit D (Supplemental Report of Dr. Van Arsdell); Exhibit E (Supplemental Report of Dr. Reitman); Exhibit F (Supplemental Report of Dr. Scott); Exhibit G (August 5, 2008 letter from Timothy McDermott to Evan Douthit regarding DVD of Exponent testing); Exhibit H (DVD of Exponent July 29, 2008 testing).  These "supplemental" reports and the attached DVD contained almost 800 pages of reports, exhibits, appendices, tables, photographs, and an 8 minute and 44 second video of an entirely new sled test conducted by Evenflo's car seat expert (William Van Arsdell, Ph.D.) and new "wear" or drag testing performed by Evenflo's polymer expert (Maureen Reitman, Sc.D), **all of which were generated several weeks after the June 20 close of discovery and two weeks after the Court's July 17 order**.⁴

So instead of taking the expert depositions it represented to the Court that it **had** to have to prepare its *Daubert* and dispositive motions, Evenflo seized the opportunity to do entirely new testing to shore up obvious deficiencies in its case that were brought to light during it's experts' depositions in mid-June, just prior to the June 20, 2008 close of discovery.⁵  A cursory review of these "supplemental" reports and the accompanying materials clearly indicates that these reports and all the new testing and opinions contained therein were pure **rebuttal** in that they were solely intended to rebut or contradict the supplemental reports of Plaintiffs' experts.  However,

---

³ The only deposition that Evenflo conducted was of Plaintiffs' expert, Dr. Benedict, on August 13, 2008.  Exhibit C (Notice of Videotaped Deposition of Dr. Charles Benedict).

⁴ Of course, this extreme volume of material is in direct contrast to the 58 pages of supplemental reports that Evenflo complained of in its Memorandum in Support of its Motion to Strike.  *See* Doc. #246 at pg. 2.

⁵ This testing, which is discussed *supra*, was conducted by Dr. Van Arsdell and Dr. Reitman.  *See* Exhibit D (Supplemental Report of Dr. Van Arsdell) at pg. 2; Exhibit E (Supplemental Report of Dr. Reitman) at 3.  However, these tests were also relied on by Dr. Scott in his attempt to rebut the supplemental reports of Plaintiffs' experts.  *See* Exhibit F (Supplemental Report of Dr. Scott) at pg. 4.

5

leave of Court was not obtained before these rebuttal reports were served in violation of the Court's "Final Scheduling and Trial Order" *See* Doc. #30 at ¶ 6.

After Evenflo served its "supplemental" reports, Plaintiffs' counsel made a good faith attempt to resolve the dispute without having to resort to judicial intervention.  *See* Exhibit I (August 15, 2008, 4:15 PM email correspondence from Evan Douthit to Timothy McDermott and response).  This attempt was unsuccessful.  Therefore, Plaintiffs respectfully request an Order striking these reports and precluding the use of this untimely testing as these materials were in direct contravention of this Court's prior Orders.

## II.     ARGUMENT AND AUTHORITIES

This Court should strike Evenflo's "supplemental" reports for two reasons: (1) the reports contain entirely new testing and new work conducted more than a month after of the close of discovery, and (2) the reports were intended solely to contradict or rebut Plaintiffs' supplemental expert reports and, therefore, leave of court upon a showing of good cause were required pursuant to this Court's "Final Scheduling and Trial Order" – and such leave was not sought or obtained. *See* Doc. #30 at ¶ 6.  Furthermore, Evenflo's disregard for this Court's prior Orders warrant sanctions including, but not limited to, the costs associated in the filing of this motion.

### A.     Evenflo's new tests, which were conducted after the close of discovery in an effort to bolster testing omissions by its experts, should be stricken.

Both Dr. Van Arsdell and Dr. Reitman conducted separate but totally new tests which they then attempted to insert in their "supplemental" reports to rebut criticism by Plaintiffs' experts that Evenflo had failed to test Plaintiffs' theories of the case.[6]  The theories that Evenflo failed to test were that: (1) the injuries to Gatlin Perryman were caused when his child safety seat's carrier was "false-latched" to its convenience base located in the rear center seat at the

---

[6] While Dr. Scott did not conduct additional testing, his "supplemental" report relies on the new testing conducted by Dr. Van Arsdell and should, therefore, be stricken.  Exhibit F (Supplemental Report of Dr. Scott) at pg. 4.

6

time of the accident and when the accident occurred, the carrier detached from the base, allowing the seat to strike the center console between the front passenger seats; and (2) that marks on the subject seat were not caused by a deploying airbag but were "use" marks caused by extensive use of the seat by Gatlin's family.

Dr. Van Arsdell conducted a sled test on July 29, 2008 – more than a month after the close of discovery – in which he claimed to have removed the right fetter pin and to have false-latched the carrier to the base of the child safety seat. Exhibit D (Supplemental Report of Dr. Van Arsdell) at pg. 2. Evenflo will be hard-pressed to explain why they waited more than a month after the close of discovery to test Plaintiffs' false-latch theory. After all, Evenflo has known of Plaintiffs' allegations of a "false-latch" defect since at least December 2007. Exhibit J (Mr. Whitman's Preliminary Restraint System Analysis Report) at pg. 27. Evenflo became acutely aware of the deficiency in Dr. Van Arsdell's testing and opinions when he was forced to concede at his deposition that since the January depositions of plaintiffs' experts, he had known of Plaintiffs' false-latch theory but that he had conducted no such test. In his deposition on June 6, 2008 – roughly two weeks before the close of discovery – the following exchange occurred:

> Q. And is it your understanding that plaintiff's experts believe that the seat was false latched, meaning that the latch mechanism was engaged with the base, but the toe of the seat was not under the J-hook? Is that your understanding of what they are contending?
>
> A. Yes.
>
> Q. Did you run a sled test with the seat in that configuration that plaintiff's experts indicated that they believed it was in at the time of the accident?
>
> A. No.

Exhibit K (Van Arsdell's June 6, 2008 deposition) at pg. 65, L. 22 – pg. 66, L. 8. It is no coincidence that seven weeks after this deposition, Evenflo had Dr. Van Arsdell back at the test facility running the testing he had previously failed to do.

Likewise, Dr. Reitman also conducted additional testing in an effort to refute fact witness and expert testimony that the marks contained on the subject child safety seat were "use" marks rather than, as Evenflo's experts asserted, marks that could only have resulted from a deploying airbag. *See* Exhibit E (Supplemental Report of Dr. Reitman) at pg. 3. Although Dr. Reitman appears to have attempted to bury any mention of the "wear test" within her "supplemental" report by limiting discussion of it to one paragraph, Appendix B of Dr. Reitman's report provides some indication of how the test was conducted. Exhibit E (Supplemental Report of Dr. Reitman) at pg. 3 and Appendix B. In fact, the photographs in Appendix B indicate that these "wear tests" involved dragging an exemplar child safety seat twenty times on a carpet, a lab floor, and concrete. *See* Exhibit E (Supplemental Report of Dr. Reitman) at Appendix B. Leaving aside the obvious failings of Dr. Reitman's dubious "test,"[7] Dr. Reitman's "wear tests" were first disclosed to Plaintiffs more than a month after the close of discovery in violation of this Court's Orders.

Given the fact that Evenflo filed its motion to strike Plaintiffs' supplemental reports mere weeks before engaging in its own belated additional testing, Evenflo cannot, in good faith, claim that it was unaware that the introduction of additional tests to bolster its expert opinions was not "supplementation." After all, Evenflo cited case law holding to that effect in support of its motion to strike. *See* Evenflo's Memo. in Support of its Mot. to Strike (Doc. #246) at 11 (*citing Akeva L.L.C. v. Mizuno Corp.*, 212 F.R.D. 306, 310 (M.D.N.C. 2002; *Linder v. Meadow Gold Dairies, Inc.*, 2008 WL 763236, *13 (D. Hawaii March 19, 2008)).

---

[7] For instance, Dr. Reitman's report and accompanying appendix do not indicate the parameters of the testing (e.g., distance, time, etc.). Furthermore, Dr. Reitman's "wear test" was clearly responsive to Dr. Benedict's opinions contained in his supplemental report which were based on Dr. Hendrix's testimony regarding repeated use of the carrier. Exhibit E (Supplemental Report of Dr. Reitman) at pg. 3. Dr. Reitman fails to explain how dragging a carrier across different flooring surfaces for unspecified times and distances will duplicate marks consistent with use of the child safety seat prior to the accident (e.g., vacations, in grocery carts, at the store, at the pool, storage, etc.). However, rather than focus on the obvious flaws in methodology, Plaintiffs' position is that the untimely test should never have been conducted and cannot be used by Evenflo.

8

In *Akeva L.L.C.*, the court held that additional testing conducted by a party in order to bolster its inadequate expert preparation was not "supplementation" and excluded the additional testing and opinion based on that testing. *Akeva*, L.L.C. 212 F.R.D. at 310-12.  Likewise, in *Linder*, the court held that an October 2007 "supplemental" report by a party's expert that contained new field work whose relevance should haven been anticipated earlier was not "supplementation" and that exclusion of the testing was warranted. *Linder*, 2008 WL 763236 at 14, 16-17.  Having cited and relied upon these cases, Evenflo cannot claim that its violation of this Court's Orders by having Dr. Van Arsdell and Dr. Reitman conduct new testing and new work after the close of discovery was substantially justified.

Furthermore, additional case law demonstrates that these reports and testing were improper and should be stricken.  For instance, in *3M Innovative Properties Co. v. Dupont Dow Elastomers, LLC*, 2005 WL 6007042, *4 (D. Minn. 2005) (slip copy), the court rejected the argument that entirely new testing constituted supplementation.  In that case, the defendant, like Evenflo, argued that it should be permitted to conduct additional testing after the close of discovery in order to cure significant defects exposed during the deposition of its experts under the guise of "supplementation." *Id.* at *3.  However, the district court properly rejected this argument by recognizing that "[the defendant] is attempting to use the supplementation requirements of Rule 26(e) to untimely bolster its expert report by correcting failures of omission caused by the expert's inadequate or incomplete preparation." *Id*. at *5.  Accordingly, the court granted the plaintiffs' motion to strike. *Id*.  The argument that Evenflo will have to make in response – i.e., that its report was merely supplementation – ignores the fact that "'supplementation cannot be used to correct [a] major omission in [an] initial report.'" *3M Innovative Properties Co.*, 2005 WL 6007042 at *4 (*citing* 6 James Wm. Moore, et. al., Moore's Federal Practice § 26.131 n. 18.1 (2005)).

9

    **B.**    **Evenflo's "supplemental" reports were actually rebuttal reports and the Court's "Final Scheduling and Trial Order" required that, prior to service, Evenflo seek leave of court and demonstrate good cause.**

Even if Evenflo's "supplemental" reports had not contained entirely new tests and new work, the contents of these reports demonstrates that they were served in violation of this Court's Orders. In fact, these "supplemental" reports were not supplemental at all. Rather, they were solely intended to contradict or rebut Plaintiffs' supplemental expert reports and leave of court and good cause was required prior to service.

  Evidence is "rebuttal" evidence if it is "intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B), within 30 days after the other party's disclosure." Fed.R.Civ.P. 26(a)(2)(C); *Schablonentechnik v. MacDermaid Graphic Arts, Inc.*, 2005 WL 5974438, \*3 (N.D. Ga. 2005) (slip copy); *Keener v. United States*, 181 F.R.D. 639, 640 (D. Mont. 1998). Supplementation, on the other hand, is "correcting inaccuracies, or filling the interstices of an incomplete report based on information that was not available at the time of the initial disclosure." *Keener*, 181 F.R.D. at 640.

Any claim by Evenflo that its new reports are "supplemental" is rendered transparently false from the plain language of the reports themselves. In fact, Evenflo's experts made no attempt to hide the fact that these reports were pure rebuttal. *See* Exhibit D (Supplemental Report of Dr. Van Arsdell) at pg. 1 ("this report serves to elaborate on those opinions in this rebuttal context."); Exhibit E (Supplemental Report of Dr. Reitman) at pg. 3 (attacking Dr. Benedict's conclusions through the use of a new test); *Id.* at pgs. 4-6 (contradicting Mr. Whitman's conclusions contained in his supplemental report); *Id.* at pgs. 6-7 (attempting to rebut Dr. Benedict's conclusions regarding marks on an exemplar safety seat as compared to the subject safety seat); *Id.* at pgs. 7-8 (defending gimmicked photoshopped study from Dr. Benedict's criticism); *Id.* at pgs. 8-10 (criticizing Dr. Benedict's molding defect opinions);

Exhibit F (Supplemental Report of Dr. Scott) at pgs. 3-7 (contradicting Dr. Shanahan's supplemental report in paragraph by paragraph analysis).

Even if this Court were to find that the purpose of these reports was not solely to contradict or rebut Plaintiffs' supplemental expert reports, Evenflo's "supplementation" was not required under Rule 26(e). "Supplemental disclosures are required under Rule 23(e)(1) in only three situations: 1) upon court order; 2) when the party learns that the earlier information is inaccurate or incomplete; or 3) when answers to discovery requests are inaccurate or incomplete." *Keener*, 181 F.R.D. at 640; *see also* Fed.R.Civ.P. 23(e)(1). In this case, Evenflo was not ordered to supplement its disclosures, did not learn from Plaintiffs' supplemental expert reports that its earlier information was inaccurate or incomplete[8]; and did not have inaccurate or incomplete answers to discovery requests that required supplementation. Therefore, Evenflo's argument that its recently provided reports were "supplemental" in nature is transparently false.

    **C.**     **Evenflo's actual knowledge that its "supplemental" reports containing new testing were not "supplemental" but were rebuttal reports filed in violation of this Court's Orders warrants the imposition of sanctions.**

The Federal Rules of Civil Procedure clearly provide that sanctions may be warranted when a party "fails to obey a scheduling or other pretrial order." Fed.R.Civ.P. 16(f)(1)(C). The potential sanctions include, among other things, the preclusion of introduction of evidence and holding a party in contempt of court. Fed.R.Civ.P. 16(f) (*citing* Fed.R.Civ.P. 37(b)(2)(A)(ii)-(vii)). In addition, "the court **must** order the party, its attorney, or both to pay the reasonable expenses – including attorney's fees – incurred because of any noncompliance with [Rule 16(f)] unless the noncompliance was substantially justified or other circumstances make an award of

---

[8] Evenflo was aware, or should have been aware, of any need to "supplement" its reports to address Plaintiffs' defective design theory false-latch at least as far back as December 2007. Exhibit J (Mr. Whitman's Preliminary Restraint System Analysis Report) at pg. 27. Similarly, any need to "supplement" its reports to address the claim that marks on the seat were "use" marks was, or should have been evident, at the deposition of Dr. Hendrix, which was conducted on February 27, 2008. Even if this Court were to believe that rebuttal of this theory was not apparent at that time, pursuant to this Court's Order, Evenflo was required to seek leave of court to serve rebuttal reports.

expenses unjust." Fed.R.Civ.P. 16(f)(2) (emphasis added).  In this case, sanctions are warranted because the factual circumstances giving rise to Plaintiffs' Motion indicate that Evenflo had actual knowledge that its actions were in violation of this Court's Orders.  As a result, Evenflo cannot be heard to complain that sanctions are not warranted or that its noncompliance with this Court's Orders "was substantially justified."

Furthermore, Evenflo's actions raise serious concerns as to whether Evenflo made a misrepresentation to the Court that it would be prejudiced by the service of Plaintiffs' supplemental expert reports.  As previously stated, Evenflo claimed in its motion to strike that it would be prejudiced due to its inability to redepose Plaintiffs' experts.  However, when presented with such an opportunity, Evenflo only conducted **one** deposition and instead chose to focus its attention on running new tests and then filing multiple "supplemental" reports with new opinions based on this new testing – and then paragraph by paragraph attempts to rebut the opinions of plaintiffs' experts.

Furthermore, as previously stated, Evenflo cannot claim to have misunderstood the distinction between supplementation and rebuttal because of the fact that this precise issue was briefed in detail by both parties several weeks prior to its service of these "supplemental" reports. In fact, multiple cases cited by Evenflo in that discovery dispute directly refuted the argument that Evenflo makes here – i.e, that conducting additional testing to fix its expert's omissions is "supplementation."

In addition, when questioned whether he intended to attempt to re-open discovery and conduct new tests and new work in violation of this Court's Order by Plaintiffs' counsel, Evenflo's counsel did not state that it was his belief that the Court's Order permitted him to do so.  Instead, Evenflo's counsel waited almost two weeks to serve Plaintiffs with these "supplemental" reports making the scheduling of additional deposition and consultation with

Plaintiffs' own experts exceedingly difficult. Furthermore, Plaintiffs were forced to expend significant time, energy, and resources in preparing this Motion in addition to the work required in this case under the current scheduling Orders.

Any attempt by Evenflo to compare its nearly 800 pages of "rebuttal" reports containing extensive new testing and other new work to Plaintiffs' 58 pages of truly supplemental reports does not withstand even the slightest scrutiny. Therefore, any attempt by Evenflo to justify its violation of this Court's Order by comparing its reports to those of Plaintiffs is improper.

### III.  CONCLUSION

WHEREFORE, for the foregoing reasons, Plaintiffs respectfully request that the Court issue an Order striking the "supplemental" expert reports of Dr. Van Arsdell, Dr. Reitman, and Dr. Scott and precluding the use of untimely tests conducted by Evenflo's experts, and for an award of fees and costs associated in bringing this motion.

                WILNER BLOCK, P.A.

                /s/ Norwood S. Wilner_____
                Norwood S. Wilner
                Florida Bar No. 222194
                3127 Atlantic Blvd., Suite 3
                Jacksonville, Florida 32207
                (904) 475-9400
                (904) 391-6895 (facsimile)
                Email: nwilner@wilnerblock.com

                and

                DOUTHIT FRETS ROUSE GENTILE
                   & RHODES, LLC

                /s/ Evan A. Douthit_____
                Evan A. Douthit (admitted pro hac vice)
                903 E. 104th Street, Suite 610
                Kansas City, Missouri 64131
                PH: (816)941-7600
                FX: (816) 941-6666
                Email: edouthit@dfrglaw.com

## **CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that on the 26th of August, 2008, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notification of such filing to all counsel of record.

                                /s/ Evan A. Douthit_____
                                Counsel for Plaintiffs