**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

**RHONDA HENDRIX, parent and
guardian of G.P., a minor child,**

      **Plaintiff,**

**v.**                                   **Case No.: 3:07cv133/MCR/EMT**

**EVENFLO COMPANY, INC.,
a foreign corporation,**

      **Defendant.**

_____/

**O R D E R**

Pending before the court is the Defendant's Renewed Motion for an Award of Attorneys' Fees and Related Nontaxable Expenses (doc. 588).

The plaintiffs, Rhonda Hendrix and her minor child, G.P., filed this action in the Circuit Court for the First Judicial District of Okaloosa County, Florida, against Evenflo Company, Inc. ("Evenflo"), asserting claims for negligence and products liability stemming from an automobile accident which they claim caused G.P. to suffer severe brain injury when the infant car seat in which he was riding, which was designed and manufactured by Evenflo, separated from its base and shattered upon impact.[1]  The plaintiffs claimed that G.P. developed Autism Spectrum Disorder ("autism") and syringomyelia[2] as a result of injuries sustained in the accident.  On March 1, 2007, Evenflo served both Hendrix and

---

[1]  When driving two-week-old G.P. to a doctor's appointment, Hendrix's Ford Expedition hit the rear of another vehicle at a traffic light.  At the time of the accident, Hendrix was traveling at no more than 11 m.p.h.  The plaintiffs claimed that, prior to the accident, the car seat had been secured in its base in the center of the back seat and, upon impact, detached from its base and struck the back of the front passenger seat. Evenflo, on the other hand, argued that the car seat had been improperly placed in the front passenger seat and was struck by an airbag that deployed upon impact.

[2]  In medical terms, a syringomyelia is "the presence in the spinal cord of longitudinal cavities lined by dense, gliogenous tissue, which are not caused by vascular insufficiency."  Stedman's Medical Dictionary 1545 (25th ed. 1990).

G.P. with Proposals for Settlement under Fla. Stat. § 768.79, offering to settle each party's claims for $5,000.[3]  Neither Hendrix nor G.P. accepted the proposals within the time allowed under the statute, as a result of which the proposals were deemed rejected.  *See* Fla. Stat. § 768.79; Fla. R. Civ. P. 1.442.  Several weeks after serving the Proposals for Settlement, Evenflo removed the action to this court on the basis of diversity jurisdiction. After extensive discovery, Evenflo filed a motion for summary judgment as to liability and compensatory and punitive damages.  Based in part on rulings entered the same day under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the court granted Evenflo's motion as to compensatory damages related to autism and denied it in all other respects.  On December 31, 2008, the plaintiffs stipulated to the dismissal of all claims pertaining to syringomyelia, thereby leaving no claim for trial.  The plaintiffs then appealed the court's summary judgment ruling, which was affirmed by the Eleventh Circuit on July 21, 2010.  Six days later, Evenflo renewed its previously filed motion for attorney's fees that had been denied pending appeal.  Pursuant to Fla. Stat. § 768.79, Evenflo now seeks close to $3 million in attorneys' fees and "nontaxable expenses" as result of the plaintiffs' rejection of its Proposals for Settlement.[4]  For the reasons stated below, the court finds that Evenflo's motion should be denied.

Although parties to a lawsuit are responsible for their own attorneys' fees and

---

[3] Florida Statute § 768.79 provides, in pertinent part, that "[i]n any civil action for damages filed in the courts of this state, if a defendant files an offer of judgment which is not accepted by the plaintiff within 30 days, the plaintiff shall be entitled to recover reasonable costs and attorney's fees incurred by her or him . . . from the date of filing of the offer if the judgment is one of no liability or the judgment obtained by the plaintiff is at least 25 percent less than such offer, and the court shall set off such costs and attorneys' fees against the award."  The Eleventh Circuit has held that the statute is substantive and, therefore, applies to state law claims pending in federal court.  *See Jones v. United Space Alliance, L.L.C.*, 494 F.3d 1306, 1309-10 (11th Cir. 2007).  Because the offer of judgment statute is substantive, the court applies state law in determining its applicability.  *See id.*  Moreover, although § 768.79 refers to "offer[s] of judgment," the Rule setting forth the procedures for such offers refers to "proposals for settlement."  *See* Fla. R. Civ. P. 1.442.  Rule 1.442 recognizes that such proposals are referred to in different terms and specifically provides that it "applies to all proposals for settlement authorized by Florida law, regardless of the terms used to refer to such offers, demands, or proposals, and supercedes all other provisions of the rules and statutes that may be inconsistent with th[e] rule."  *Id.*  Evenflo served its Proposals for Settlement pursuant to § 768.79 and they thus will be construed under that statute.

[4] The defendant claims to have incurred approximately $2,086.086.25 in attorneys' fees and $868,0000 in expenses.

Case No.: 3:07cv133/MCR/EMT

expenses by virtue of common law, various statutes have been enacted to shift that responsibility to the opposing party under certain circumstances.  Florida Statute § 768.79 is one such statute.  As set forth above, according to Fla. Stat. § 768.79, a defendant may serve upon the plaintiff an offer of judgment, setting forth, among other things, the amount the defendant is willing to pay to settle the plaintiff's claims.  If the plaintiff does not accept the offer within thirty days and there is a judgment of no liability or for an amount at least 25 percent less than the amount of the offer, the plaintiff must pay the defendant's attorney's fees and costs from the date of the offer unless the court determines that the offer was not made in good faith.[5]  *See* Fla. Stat. § 768.79(6)(a), (7)(a).  "The spirit of the offer of judgment statute is to encourage litigants to resolve cases early to avoid incurring substantial amounts of court costs and attorney's fees" by imposing "a penalty [upon] parties who fail to act reasonably and in good faith in settling lawsuits."  *Eagleman v. Eagleman*, 673 So. 2d 946, 947 (Fla. 4th DCA 1996) (internal citations omitted).  A good faith offer, therefore, must bear a reasonable relationship to the amount of damages the plaintiff has suffered and be based on a realistic assessment of liability.  *Id.* at 948.  It also should take into account the amount of attorneys' fees and costs the parties are likely to incur.  *Stouffer Hotel Co. v. Teachers Ins.*, 944 F. Supp. 874, 875 (M.D. Fla. 1995).  "In cases where liability is reasonably and realistically disputed, the offer of judgment need not equate with the total amount of damages."  *Eagleman*, 673 So. 2d at 948.  "For example, if the damages in a case have the potential for a verdict of $100,000 and the defendant has realistically and reasonably assessed the chances of the plaintiff prevailing at 25%, then a $25,000 offer might very well be a good faith offer."  *Id.*  Nominal offers are not necessarily lacking in good faith, but they must have a reasonable basis, which exists "only where the undisputed record strongly indicate[s] that [the defendant] had no exposure in the case."  *Event Servs. Am., Inc. v. Ragusa*, 917 So. 2d 882, 884 (Fla. 3d DCA 2005) (internal marks omitted); *see also JES Props., Inc. v. USA Equestrian, Inc.*, 432 F. Supp.

---

[5] Although the language of the statute indicates that the statute is triggered upon the filing of the offer, Florida courts interpreting the statute have held that the statute is triggered instead upon service of the offer. *See, e.g., Jordan v. Food Lion, Inc.*, 670 So. 2d 138, 140 (Fla. 1st DCA 1996).

2d 1283, 1294 (M.D. Fla. 2006). In essence, "[a] *bona fide* offer of judgment should be sufficient to cause a temperate and knowledgeable attorney to pause and carefully evaluate his client's stance." *Stouffer*, 944 F. Supp. at 875. However, the offeror need not "possess, at the time he makes the offer, the kind or quantum of evidence needed to support a judgment." *Donohoe v. Starmed Staffing, Inc.*, 743 So. 2d 623, 625 (Fla. 2d DCA 1999). In order to determine whether an offer was made in good faith, the court must consider the facts and circumstances known to the offeror at the time the offer was made. *JES Props.*, 432 F. Supp. 2d at 1295; *see also Fox v. McCaw Cellular Communications of Florida, Inc.*, 745 So. 2d 330, 333 (Fla. 4th DCA 1998). The offeree bears the burden of proving that an offer was not made in good faith. *See Schmidt v. Fortner*, 629 So. 2d 1036, 1041 n.6 (Fla. 4th DCA 1993).

Rule 1.442 of the Florida Rules of Civil Procedure sets forth the procedural requirements pertaining to offers of judgment, which should be strictly construed in favor of the party against whom sanctions are sought.[6] *See Stasio v. McManaway*, 936 So. 2d 676, 678 (Fla. 5th DCA 2006); *see also Willis Shaw Exp., Inc. v. Hilyer Sod, Inc.*, 849 So. 2d 276, 278 (Fla. 2003). Among other things, Rule 1.442 requires that any offer "identify the claim or claims the proposal is attempting to resolve" and "state with particularity any relevant conditions." Fla. R. Civ. P. 1.442(c)(2)(B), (C), and (E). "'The rule intends for a proposal for judgment to be as specific as possible, leaving no ambiguities so that the recipient can fully evaluate its terms and conditions.'" *State Farm Mut. Auto. Ins. Co. v. Nichols*, 932 So. 2d 1067, 1079 (Fla. 2006) (quoting *Lucas v. Calhoun*, 813 So. 2d 971, 973 (Fla. 2d DCA 2002)). In other words, "the settlement proposal [must] be sufficiently clear and definite to allow the offeree to make an informed decision without needing

---

[6] Although the Eleventh Circuit has not addressed the applicability of Rule 1.442 in a diversity action, it has noted that Rule 1.442 "governs settlements" and "applies to offers made pursuant to § 768.79." *McMahan v. Toto*, 311 F.3d 1077, 1082 (11th Cir. 2002). In *McMahan*, the court applied the substantive law of Virginia to the plaintiff's underlying claim. In considering the defendant's motion for attorneys' fees, however, the court applied § 768.79. The court also considered whether the defendant had complied with Rule 1.442's particularity requirements in making its offer of judgment. *Id.* It thus appears that the Eleventh Circuit considers at least the particularity aspect of Rule 1.442 to be substantive for purposes of *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938).

clarification. If ambiguity within the proposal could reasonably affect the offeree's decision, the proposal will not satisfy the particularity requirement." *Id.*; *see also Stasio*, 936 So. 2d at 678 (noting that "virtually *any* proposal that is ambiguous is not enforceable").

The court finds Evenflo's Proposals for Settlement unenforceable for two reasons. First, they were not made in good faith.  Indeed, considering the timing and amount of Evenflo's offers, along with the facts and evidence known to Evenflo at the time, the court finds that there was no reasonable basis for the offers and that they were not made in a sincere attempt to settle the plaintiffs' claims.[7]  At the time Evenflo served its Proposals for Settlement, there was no question but that G.P., a two-week old infant, had been in an automobile accident during which his car seat separated from its base.  There likewise was no question but that G.P. showed signs of a brain injury following the accident.  Indeed, CT and MRI scans performed shortly after the accident revealed bleeding inside G.P.'s skull and bruising to his brain.  Moreover, Evenflo had previously recalled a similar car seat for cracking in a like manner due to a manufacturing defect and had discovered that the same model safety seat as that in which G.P. was riding fractured in drop tests and had the potential to falsely latch and separate from the base during an accident, resulting in injury and even death to the infant.  In fact, several lawsuits had been filed against Evenflo based on car seat/base separation.  G.P.'s car seat also was missing a fetter pin, which is used to help secure the seat to the car seat base.  In addition, when Evenflo served its offers, only two depositions had been taken – the previous day.  The first deposition was of Rhonda Hendrix, G.P.'s mother, who testified about the circumstances of the accident, including the fact that G.P.'s car seat had been properly secured in the center of the back seat.[8]  The other deposition was of a fireman who responded to the scene of the accident and testified that he was not aware of the location of the car seat and otherwise recalled

---

[7] The court would note that, in its Notice of Removal filed several weeks after Evenflo served its Proposals for Settlement, Evenflo acknowledged that a verdict in favor of the plaintiffs likely would exceed the $75,000 amount in controversy requirement for diversity jurisdiction.

[8] Although Hendrix's deposition commenced the day before Evenflo served its Proposals for Settlement, it was not completed until almost a year later.

little about the accident. No expert discovery had been conducted. Rather, Evenflo retained the first of eight expert witnesses only two days before serving its offers, and that expert had not yet performed any of the testing that would ultimately serve as the basis for his opinions and, instead, had spent only forty-two minutes reviewing materials in the case. Notably, because of the extensive amount of discovery remaining to be conducted, Evenflo requested an extension of the discovery deadline on May 4, 2007, more than two months after it served its Proposals for Settlement, and also requested that mediation not be required until December 15, 2007. It thus appears that Evenflo recognized – more than two months after it served its offers – that the case was essentially in its infancy and that a great deal of discovery needed to be conducted before it could realistically assess its chances of liability. Finally, given the facts of the case, the court has little doubt that, had Evenflo been found liable, the verdict likely would have been substantial and that Evenflo's $5,000 offers thus bore no realistic and reasonable relationship to the plaintiffs' damages.[9] The fact that Evenflo retained eight expert witnesses to defend against the plaintiffs' claims suggests that Evenflo was aware of that realistic possibility and that it did not, as it now contends, discount the plaintiffs' claims at the time it served its Proposals for Settlement.

Although Evenflo now argues that it "knew or should have known" at the time it served its Proposals for Settlement that its exposure was minimal due to evidence indicating that the safety seat had been improperly placed in the front passenger seat and struck by an airbag, what Evenflo "should have known" at the time it served its proposals is of no consequence to the issues before the court. Moreover, while Evenflo provided a timeline of events indicating that it, in fact, was aware of the airbag/misuse defense at the time it served its Proposals for Settlement, Evenflo never disclosed any of those facts to the plaintiffs or indicated in any way before its Proposals for Settlement expired that it intended to assert the defense. In fact, in the Initial Scheduling Order entered on March 28, 2007, the court ordered the parties to submit a joint Planning Report that included,

---

[9] According to the plaintiffs, G.P.'s "life care plan" was estimated to be in the millions.

among other things, "the nature and basis of all claims and defenses, and a good faith attempt to identify the principal factual and legal issues in dispute" (doc. 4). At no time during the parties' discussions did Evenflo raise an issue as to the location of the car seat within the vehicle; Evenflo also failed to raise the issue in the parties' Planning Report submitted on May 4, 2007, and in its Initial Disclosures served the same day. If Evenflo formulated the airbag/misuse defense as early as November 2006, as it claims, it was obligated to disclose that defense, or at least facts and anticipated evidence serving as the basis of the defense, in both the Planning Report and its Initial Disclosures. The fact that it did not indicates that Evenflo either had not yet formulated the defense or deliberately withheld facts supporting the defense until after its Proposals for Settlement had expired. In either case, Evenflo's actions demonstrate a lack of good faith.

Finally, assuming Evenflo had formulated the airbag/misuse defense as of March 1, 2007, when it served its Proposals for Settlement, there was evidence known to Evenflo at the time that contradicted its position in that regard. Again, Hendrix, whom the court would note is a well-educated optometrist, testified in her deposition that the safety seat had been properly placed in its base in the center of the back seat. Hendrix's testimony was corroborated by the police report, which indicated that the safety seat had been properly restrained in the rear, center seat of the vehicle and that pieces of the fractured safety seat were retrieved from the rear floorboard.[10] Given these facts, the undisputed injuries suffered by G.P., and the novelty and difficulty of the issues involved in the case, it cannot be said that the undisputed record *at the time Evenflo served its Proposals for Settlement* strongly indicated that Evenflo had no exposure in the case.[11] *See Ragusa*,

---

[10] Although Evenflo may not have been aware of this at the time it served its offers, Hendrix's testimony also was corroborated by that of a witness identified in the police report who arrived at the scene of the accident within seconds and witnessed the safety seat being removed from the floorboard of the rear passenger seat.

[11] Insofar as the novelty and difficulty of the issues is concerned, the court would note, as did the plaintiffs in their response to Evenflo's motion, that the question of what causes autism remains a subject of much debate in the scientific community. In a 60-page order, the court ultimately concluded that there was insufficient evidence of a causal connection between autism and traumatic brain injury to support expert testimony on the subject; before reaching such a conclusion, however, the court scrutinized a voluminous amount of conflicting evidence on the matter, including the parties' expert reports.

917 So. 2d at 884. To the contrary, the court's denial of Evenflo's motion for summary judgment as to liability, damages related to syringomyelia, and punitive damages confirms that Evenflo had potentially significant exposure in the case well after it served its Proposals for Settlement and, therefore, that its proposals were not based on a realistic assessment of liability and thus were not made in good faith.

Second, even if Evenflo's Proposals for Settlement had been in good faith, Evenflo's motion should nevertheless be denied because there is no evidence that the plaintiffs acted unreasonably in rejecting them. In the event an offer of judgment is made in good faith, an award of attorneys' fees and costs is mandatory under Fla. Stat. § 768.79 when the statutory prerequisites are met. *See TGI Friday's, Inc. v. Dvorak*, 663 So. 2d 606, 611 (Fla. 1995). The court thus typically does not consider a party's reasonableness or lack thereof in rejecting an offer of judgment. *See id.* In this case, however, Evenflo expressly conditioned its award of attorneys' fees and costs on the plaintiffs' *unreasonable* rejection of the offers. Indeed, according to Evenflo's Proposals for Settlement, a failure to accept within thirty (30) days "shall constitute a rejection and, *if unreasonably rejected*, may result in appropriate sanctions being imposed against plaintiff . . . in accordance with Florida law, including costs, expenses and attorneys' fees." (emphasis added). Under Rule 1.442(c), an offer of judgment may contain conditions, provided they are stated with particularity. The particularity requirement is intended to avoid ambiguity in an offer so the recipient can fully assess its terms and conditions. *See Nichols*, 932 So. 2d at 1079. Construing Evenflo's offer in favor of the plaintiffs, as it must, the court finds that any award of sanctions against the plaintiffs clearly and unambiguously was conditioned on their unreasonable rejection of the proposals.[12] Having found that unreasonableness was a condition of the proposals, the court must determine whether the plaintiffs' rejection of the proposals, in fact, was unreasonable. For the reasons stated above, the court has little

---

[12] Although Evenflo argues that its use of the phrase "unreasonably rejected" was based on "black letter law" holding that § 768.79 serves as a sanction against parties who unreasonably reject settlement offers, the reasonableness of a plaintiff's rejection is not referenced in the statute or the Rule; to the contrary, courts are not to consider the reasonableness of the plaintiff's rejection in determining whether to award attorneys' fees pursuant to an offer of judgment. *See TGI Friday's*, 663 So. 2d at 611.

Case No.: 3:07cv133/MCR/EMT

difficulty concluding that it was not. Rather, given the gravity of G.P.'s injuries and anticipated lifelong expenses, as well as the novelty and difficulty of the issues involved in the case and the facts and evidence known to the parties at the time, the court agrees with the plaintiffs that their decision was abundantly reasonable.

In light of its findings, the court need not address the plaintiffs' arguments regarding ambiguity. The court would note, however, that in the event unreasonableness were not considered a condition of the proposals, Evenflo's inclusion of the term created sufficient ambiguity to render the proposals invalid. As stated above, for an offer of judgment to be enforceable, it must be sufficiently clear that the offeree can fully assess its terms and conditions without clarification. *See* Fla. R. Civ. P. 1.442(c); *see also Nichols*, 932 So. 2d at 1079. The court finds that inclusion of the phrase "unreasonably rejected" could reasonably have affected the plaintiffs' decisions and thus rendered the proposals impermissibly ambiguous. *See id.*; *Stasio*, 936 So. 2d at 678. For all of these reasons, the court finds that Evenflo's motion for attorneys' fees and costs should be denied. The court would also note that an award of attorneys' fees in this case would not serve the purpose of the offer of judgment statute, which is to promote settlement, not force plaintiffs into accepting unreasonable offers out of fear of having to pay the opposing party's attorneys' fees. *See James v. Wash Depot Holdings, Inc.*, 489 F. Supp. 2d 1336, 1341 (S.D. Fla. 2007) (finding that "[i]t is not enough that a defendant's offer of judgment be based on its own unilateral belief and subjective determination that it is not liable" and that "'trial courts should view with considerable skepticism nominal offers which bear no reasonable relationship to damages and which are not founded upon a reasonable and realistic assessment of liability'" as "'[s]uch nominal offers cannot advance the statutory purpose of encouraging settlement, but instead serve no purpose other than to lay a predicate for a subsequent award of attorney's fees'") (quoting *Eagleman*, 673 So. 2d at 948); *Stouffer*, 944 F. Supp. at 875 (finding that "an offer of judgment or offer of settlement or the same thing by another name ought to be more than a carefully crafted, cleverly calculated, and disingenuous attempt to shift the economic burden of litigation" and should "fairly account for the risks of litigation, the costs and fees at stake, and the other components of

uncertainty that sophisticated persons assay when deciding whether to settle").

Accordingly, it is ORDERED that Evenflo's motion for attorneys' fees and costs (doc. 588) is DENIED.

**DONE AND ORDERED** this 31st day of March, 2011.


s/ *M. Casey Rodgers*

**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**